# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>and<br><br>**THE STATE OF INDIANA,**<br><br>*Plaintiffs*,<br><br>v.<br><br>**METALWORKING LUBRICANTS COMPANY,**<br><br>*Defendant*. | Case No.: 1:22-cv-01560-JMS- DLP |

## UNITED STATES' AND INDIANA'S UNOPPOSED MOTION TO ENTER CONSENT DECREE

Plaintiffs, the United States of America ("United States"), by the authority of the Attorney General and through the undersigned attorneys, and at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), and the State of Indiana ("Indiana" or the "State") on behalf of the Indiana Department of Environmental Management ("IDEM") (collectively, "Plaintiffs") hereby move for entry of the Consent Decree between the United States and Metalworking Lubricants Company ("Metalworking" or "Defendant"). *See* Exhibit A (Consent Decree). The United States lodged the Consent Decree on August 5, 2022. The proposed Consent Decree will resolve Plaintiffs' claims against the Defendant and conclude the action.

The United States published notice of the proposed Consent Decree in the Federal Register, 87 Fed. Reg. 49614 (Aug. 11, 2022), and that notice solicited public comment on the

Decree for a 30-day public comment period, in accordance with 28 C.F.R. § 50.7 and Department of Justice policy. The public comment period ended on September 12, 2022. The United States has received no comments on the proposed Consent Decree. The Defendant consents to entry of the Decree without further notice (CD ¶ 91). Because the settlement is fair, reasonable, and consistent with the purposes of the Clean Air Act ("Act"), the United States and Indiana respectfully request the Court to enter the Consent Decree as a final judgment by executing page 48 of the Decree and entering it as an order of the Court.

## FACTUAL BACKGROUND

This is a civil action brought pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), and pursuant to the laws of Indiana, for assessment of civil penalties and injunctive relief against the Defendant for alleged violations of the Act and Metalworking's Federally Enforceable State Operating Permit, including for emitting more than 24 tons per year of organic hazardous air pollutants from Defendant's used oil processing facility located in Indianapolis, Indiana.

## TERMS OF THE SETTLEMENT

Entry of this Consent Decree as a final order will resolve the claims in this civil action. Under the Consent Decree, the Defendant will install, maintain, operate, and continuously monitor a Carbon Adsorption System ("CAS") to control organic emissions from the facility. The CAS will be installed downstream of the Defendant's existing Scrubber used to control sulfur dioxide emissions (CD ¶ 13). The CAS and Scrubber installed and operating in sequence will constitute the Defendant's "Emission Control System" at the Facility.

The Defendant also will install new tanks, oil-water separators, piping and/or ductwork, and make repairs to the existing tanks, oil-water separators, piping and/or ductwork to ensure that all existing, new, and replacement oil processing tanks and oil-water separators are covered

by fixed roofs and vented directly through a closed-vent system to the Emissions Control System which will significantly reduce emissions (CD ¶¶ 14-18).

The Defendant will test the Emission Control System to ensure that it removes at least 95 percent of the incoming organic emissions and emits no more than 8 pounds per hour of sulfur dioxide (CD ¶ 18, 19). Metalworking will regularly inspect its tanks for defects and monitor the closed-vent system to ensure it is operating with no detectable emissions, continuously monitor the concentration of organic compounds at the outlet of the CAS to know when to replace the carbon filter, and measure and record Scrubber operating parameters to ensure that the Scrubber is operating properly (CD ¶ 22-24).

In addition, Metalworking will pay a civil penalty of $310,000, split equally between the United States and the State of Indiana (CD ¶ 9, 12). The Consent Decree provides that the Court will retain jurisdiction over the matter until termination to enforce the Decree and to resolve any disputes that may arise under it (CD ¶ 85).

## STANDARD FOR ENTRY

Voluntary settlement of legal disputes is favored by the courts and is generally perceived to be in the public interest. *See Citizens for a Better Environment v. Gorsuch*, 718 F.2d 1117, 1126 (D.C. Cir. 1983). The public policy favoring the resolution of litigation through settlements is particularly strong in environmental cases. *In re Acushnet River & New Bedford Harbor: Proceedings re Alleged PCB Pollution*, 712 F. Supp. 1019, 1029 (D. Mass. 1989). As the Seventh Circuit emphasized in affirming a district court's approval of a consent decree:

> Even the most diligent litigator may conclude that settlement is the best option –
> if only because it frees up enforcement resources for use elsewhere – and to
> achieve a settlement a litigant must accept something less than its most favored
> outcome.

*United States v. Metropolitan Water Reclamation Dist. of Greater Chicago*, 792 F.3d 821, 825 (7th Cir. 2015).  The policy favoring settlement is also "particularly strong where the consent decree has been negotiated by the Department of Justice on behalf of a federal administrative agency like EPA which enjoys substantial expertise in the environmental field."  *United States v. Akzo Coatings of Am., Inc.*, 949 F.2d 1409, 1436 (6th Cir. 1991) (relying on *United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 84 (1st Cir. 1990)).  *See also United States v. Fort James Operating Co.*, 313 F. Supp. 2d 902, 907 (E.D. Wis. 2004).  As the Seventh Circuit has noted, that deference recognizes both federal administrative agencies' "expertise" and the "federal policy encouraging settlement."  *United States v. George A. Whiting Paper Co.*, 644 F.3d 368, 372 (7th Cir. 2011).[1]

The standard of review that a district court must apply in approving a Consent Decree is whether the settlement is fair (both procedurally and substantively), reasonable, and consistent with the goals of the applicable law.  *See George A. Whiting Paper Co.*, 644 F.3d at 372; *United States v. Lexington-Fayette Urban County Gov't*, 591 F.3d. 484, 489 (6th Cir. 2010); *Cannons Eng'g*, 899 F.2d at 84-85; *Air Line Stewards and Stewardesses Ass'n, Local 550 v. Trans World*

---

[1] *See United States v. Northern Indiana Public Service Company, LLC,* 2022 WL 4129470 (N.D. Ind. Sept. 12, 2022) (CERCLA settlement approved); *United States v. Cleveland-Cliff Burns Harbor, LLC*, 2022 WL 1439213 (N.D. Ind. May 6, 2022) (Clean Water Act settlement approved); *United States v. U.S. Steel Corp.*, 2021 WL 3884852 (N.D. Ind. Aug. 30, 2021) (CERCLA settlement approved); *United States v. NCR Corp.*, 2017 WL 3668771 (E.D. Wisc. Aug. 23, 2017) (CERCLA settlement approved); *United States v. Gateway Energy & Coke Co.*, 2014 WL 11720089 (S.D. Ill. Nov. 7, 2014) (Clean Air Act settlement approved).

*Airlines*, 630 F.2d 1164, 1167 (7th Cir. 1980) (settlements should be "fair, reasonable and adequate").[2]

## DISCUSSION

A.  The Consent Decree Is Fair

In determining whether a settlement is fair, courts consider factors such as the strength of the plaintiff's case, the complexity and length of the litigation, the amount of opposition to the settlement, the good faith efforts of the negotiators, the opinions of counsel, and the possible risks involved in the litigation.  *See Akzo Coatings*, 949 F.2d at 1435 (citing *United States v. Hooker Chem. & Plastics Co.*, 607 F. Supp. 1052, 1057 (W.D.N.Y. 1985)); *EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985).  A consent decree must be both procedurally and substantively fair.  *United States v. Wisconsin Elec. Power Co.*, 522 F. Supp. 2d 1107, 1112 (E.D. Wis. 2007) (citing *Cannons Eng'g*, 899 F.2d at 86).  A court's review for procedural fairness will consider the negotiation process and whether it was open and at arm's length. *See Wisconsin Elec.*, 522 F. Supp. 2d at 1112.  A court's review for substantive fairness will consider concepts of corrective justice and accountability.  *Id.* (citing *Cannons Eng'g*, 899 F.2d at 87).

Based on these considerations, the Consent Decree is unquestionably fair.  The settlement is the product of arm's-length negotiations between the United States, Indiana, and the

---

[2] An evidentiary hearing is *not* required in order to evaluate a proposed settlement of an environmental enforcement action. *See United States v. Charles George Trucking, Inc.*, 34 F.3d 1081, 1085 (1st Cir. 1994) ("requests for evidentiary hearings are, for the most part, routinely denied – and properly so – at the consent decree stage in environmental cases"); *accord United States v. Metropolitan St. Louis Sewer Dist.*, 952 F.2d 1040, 1044 (8th Cir. 1992).

Defendant after several years of difficult and at times contentious negotiation. There are no allegations of collusion between the parties. *See Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 279 (7th Cir. 2002). Further, the United States provided the public at large with an opportunity to comment on the proposed settlement. *See* 87 Fed. Reg. 49614 (Aug. 11, 2022). No comments were received in response to the formal opportunity to comment provided in the Federal Register notice. In addition, no comments were received in response to the Fact Sheet which was sent to several local community representatives or groups: Susan Martinez, Council Relations Liaison for the City of Indianapolis; Niki Lynn Girls, Executive Director of the Concord Neighborhood Group; and the Old Southside Neighborhood Association. *See* Exhibit B (Fact Sheet).

The proposed Consent Decree also is fair because it reflects the parties' careful and informed assessment of the relative merits of each other's claims, while taking into consideration the costs and risks associated with litigation. In addition to the risks of litigation, settlements can achieve results more quickly than could likely be attained through litigation. *Cannons Eng'g*, 899 F.2d at 90. The United States, Indiana, and the Defendant gain the benefit of immediate resolution of claims, while forgoing the opportunity to seek an unmitigated victory. *See Hiram Walker*, 768 F.2d at 889.

The civil penalty amount contained in the Consent Decree is based on consideration of the facts of this case and the statutory penalty factors listed in 42 U.S.C. § 7524(b), and is fair, adequate, and reasonable. *See, e.g.*, *Environmental Conservation Org. v. City of Dallas*, 529 F.3d 519, 531 (5th Cir. 2008) (noting penalty in consent decree "represents the federal government's discretionary resolution of the level of penalty needed"). The Consent Decree also obtains substantial injunctive relief designed to significantly reduce the emissions from the

Defendant's facility that was arrived at after consulting with technical experts and engineers. In short, the Consent Decree represents a rational, sound decision and is fair in light of the risks and expense of continuing litigation, the arms-length negotiations that led to the settlement, and the substantial benefit to the public from the injunctive relief and civil penalty.

    B. <u>The Consent Decree Is Adequate and Reasonable</u>

The reasonableness of a consent decree is determined by considering "the nature/extent of hazards; the degree to which the remedy will adequately address the hazards; possible alternatives for remedying hazards; and the extent to which the decree furthers the goals of the statute." *Akzo Coatings*, 949 F.2d at 1436 (*citing United States v. Cannons Eng'g Corp.*, 720 F.Supp. 1027, 1038 (D. Mass. 1989)). One of the more important factors "when evaluating whether a proposed consent decree is reasonable is 'the decree's likely effectiveness as a vehicle for cleansing' the environment." *Lexington-Fayette Urban Cnty Gov't*, 591 F.3d at 489 (quoting *Akzo Coatings*, 949 F.2d at 1437).

The Consent Decree is adequate and reasonable because it provides both prevention of future harm to human health and the environment through significant injunctive relief and deterrence of further environmental harms through the $310,000 civil penalty. *See Lexington-Fayette Urban Cnty Gov't*, 591 F.3d at 489 (finding consent decree reasonable where it will bring defendant into compliance and prevent future violations). In addition, the terms of injunctive relief are fair, adequate, and reasonable in light of the facts and circumstances of this case. The proposed Consent Decree also includes typical features to ensure consistent compliance, such as stipulated penalties for specified Consent Decree violations and a retention of jurisdiction to allow judicial resolution of disputes over Consent Decree compliance, if necessary.

The Consent Decree is also a reasonable compromise. In evaluating the reasonableness of a proposed Consent Decree, courts have considered, among other things, the extent to which a consent decree reflects the relative strengths or weaknesses of the Government's case. *United States v. B.P. Exploration*, 167 F. Supp. 2d 1045, 1053 (N.D. Ind. 2001). There is no certainty that the United States and Indiana would obtain a better outcome if the claims were litigated to judgment. Settlement has the benefit of resolving the government's claims without litigation, avoiding a possibly significant devotion of time and resources by the Court and the parties.

C. <u>The Consent Decree Is Consistent with Applicable Law and in the Public Interest</u>

To evaluate the public interest, "the district court must consider whether the decree is 'consistent with the public objectives sought to be attained by Congress.'" *Lexington-Fayette Urban Cnty Gov't*, 591 F.3d at 490 (quoting *Williams v. Vukovich*, 720 F.2d 909, 923 (6th Cir. 1983)); *see also BP Exploration*, 167 F. Supp. 2d at 1054 ("the most important factor as to public policy is whether the decree comports with the goals of Congress"). The Court's role "is not to determine whether the resulting array of rights and liabilities 'is the one that will *best* serve society,' but only to confirm that the resulting settlement is 'within the *reaches* of the public interest.'" *United States v. Microsoft Corp.*, 56 F.3d 1448, 1460 (D.C. Cir. 1995) (quoting *United States v. Western Elec. Co.*, 900 F.2d 283, 309 (D.C. Cir. 1990)) (emphasis in original, citations omitted).

The Consent Decree is consistent with the Clean Air Act. The purpose of the Act includes "protect[ing] and enhanc[ing] the quality of the Nation's air resources as to promote the public health and welfare and the productive capacity of its population" as well as pollution prevention. 42 U.S.C. § 7401. The proposed Consent Decree furthers these goals. The injunctive relief and $310,000 dollar civil penalty, which is authorized by the Act and required in the

8

Consent Decree, is intended to serve as general and specific deterrence to promote compliance with the law. *See, e.g.*, *Tull v. United States*, 481 U.S. 412, 422-23 (1987) (penalties are to punish and deter); *Friends of the Earth, Inc. v. Laidlaw Env't Servs.*, 528 U.S. 167, 185 (2000) ("Congress has found that civil penalties . . . do more than promote immediate compliance by limiting the defendant's economic incentive to delay [compliance]; they also deter future violations."). The compliance requirements will reduce organic emissions and redress harm caused by the Defendant.

The Consent Decree also furthers the public interest by encouraging voluntary settlement. *See George A. Whiting Paper Co.*, 644 F.3d at 372 ("trial court must defer to the expertise of the agency and to the federal policy encouraging settlement"). While the civil penalty and other terms may differ somewhat from the relief that the United States and Indiana might seek in litigation, it is uncertain if more would be gained by continuing to litigate these claims through trial. The settlement embodied in the proposed Consent Decree constitutes the United States' and Indiana's best efforts to resolve this case in a manner consistent with the interests of the public. Moreover, additional litigation and a costly trial involving expert witnesses would drain the time and resources of all parties involved. *See Akzo Coatings*, 949 F.2d at 1436 n.25. The Consent Decree furthers the public interest by achieving the goals of the Clean Air Act without the burden and uncertainty of trial.

## CONCLUSION

For the foregoing reasons, the proposed Consent Decree is fair, reasonable, and consistent with the statutory objectives of the Clean Air Act. Accordingly, the United States and Indiana respectfully request that the Court grant this motion and approve, sign, and enter the proposed Consent Decree as a final judgment in this case.

Respectfully submitted,

**FOR THE UNITED STATES OF AMERICA:**

**TODD KIM**
Assistant Attorney General
U.S. Department of Justice
Environment and Natural Resources Division

Dated: September 16, 2022        *Richard Gladstein*
**RICHARD GLADSTEIN**
Senior Counsel
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C.  20044-7611
(202) 514-1711
Richard.Gladstein@usdoj.gov

Dated: September 16, 2022        *Shelese Woods*
**SHELESE WOODS**
Assistant United States Attorney United
States Attorney's Office 10 West
Market Street, Suite 2100
Indianapolis, IN 46204
317-226-6333
shelese.woods@usdoj.gov

Of Counsel:

**ROBERT M. PEACHEY**
Office of Regional Counsel
U.S. EPA Region 5 (C-14J)
77 W. Jackson Blvd.
Chicago, Illinois 60604
Phone: (312) 353.4510
Fax: (312) 692.2422
E-mail: peachey.robert@epa.gov

FOR THE STATE OF INDIANA

THEODORE E. ROKITA

Attorney General of Indiana

*Aleksandrina Pratt*
**ALEKSANDRINA PRATT**
Deputy Attorney General
Administrative & Regulatory Enforcement Litigation
Office of Attorney General
302 West Washington Street IGCS
5th Floor
Indianapolis, IN 46204
(317) 232-4849
Aleksandrina.Pratt@atg.in.gov

11